**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| TELEBRANDS CORP., | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  A-26-CA-01472-XR |
| | § | |
| YANGJIANG NEW SPORTS | § | |
| TECHNOLOGY PRODUCTS CO., LTD.., | § | |
| SHENZHEN DEYUE ELECTRONICS | § | |
| CO., LTD.,  SHAOLONG SUPPLY | § | |
| CHAIN (SHENZHEN) CO., LTD., | § | |
| SHENZHEN PUZHUO TECHNOLOGY | § | |
| CO., LTD., | § | |
| *Defendants* | § | |

**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER**

On this date, the Court considered Plaintiff Telebrands Corp.'s Motion for *ex parte* Temporary Restraining Order and Anti-Suit Injunction (ECF No. 2) and its arguments at the *ex parte* hearing on June 9, 2026. After careful consideration, the Court finds good cause exists to grant some—but not all—of the relief requested in Plaintiff's motion.

**BACKGROUND**

Plaintiff is the owner of all right, title, and interest in and to U.S. Patent No. 11,608,915 for "Expandable and Contractible Garden Hose" ("the '915 Patent"). Plaintiff also sells a line of expandable garden hoses sold under the trademark POCKET HOSE® and other related marks ("Pocket Hose Products") that embody the '915 Patent.

Plaintiff alleges that unauthorized infringers, including Defendants, have listed and sold infringing expandable hoses on online marketplaces, such as Amazon.com ("Amazon"). In response, Plaintiff has successfully employed Amazon's internal, quasi-judicial complaint processes, including the Amazon Patent Evaluation Express ("APEX") Procedure, to have

Amazon take down listings (referred to as Amazon Standard Identification Numbers or "ASINs") of products alleged to infringe the '915 Patent, including products sold by the Defendants (the "Chinese Entities")—Yangjiang New Sports Technology Products Co., Ltd. ("Xinte"), Shenzhen Deyue Electronics Co., Ltd. ("Deyue"), Shaolong Supply Chain (Shenzhen) Co., Ltd. ("Shaolong"), and Shenzhen Puzhuo Technology Co., Ltd. ("Puzhuo").

The Chinese Entities, in turn, have filed suits in the United States and in the People's Republic of China, where they are based, challenging (directly and indirectly) the removal of their ASINs based on the '915 Patent.

In August 2024, Defendant Xinte filed an action against Telebrands in the District of New Jersey, *Yangjiang Xinte Sports Technology Products Co., Ltd. v. Telebrands Corp.*, Case No. 3:24-cv-08626-ZNQ-JBD ("New Jersey Action"), seeking a declaratory judgment of non-infringement of the '915 Patent. Xinte voluntarily dismissed the New Jersey Action in October 2024.

March 24, 2025, a purported patent licensee of Xinte,[1] Yangjiang Xinhe Houseware Co., Ltd. ("Xinhe"), filed an action in the District of Delaware, *Yangjiang Xinhe Houseware Co., Ltd. v. Telebrands Corp.*, Case No. 1:25-cv-00365-JLH ("Delaware Action"), again seeking in part a declaratory judgment of non-infringement of the '915 Patent. The Delaware Action was dismissed for lack of standing in February 2026.

Finally, in March 2025, the Chinese Entities filed a civil complaint in the Yangjiang Intermediate People's Court, Guangdong Province, in China (the "China Action"), alleging unfair competition based on Telebrands' filing of complaints with Amazon against their products for alleged violations of the '915 Patent. In addition to damages, the Chinese Entities are seeking an

---

[1] There is good cause to believe that Xinhe brought the Delaware Action as a proxy for Xinte, given Xinhe's purported license to one of Xinte's patents and Xinhe's allegations that Telebrands had been aware of its noninfringement arguments since the New Jersey Action, an action to which Xinte–not Xinhe–was a party.

order requiring that Telebrands stop filing, and that Amazon stop accepting, complaints against Xinte's expandable hose products based on infringement of the '915 Patent.

While cast as an unfair competition claim, the Chinese Entities' theory of liability requires the Yangjiang Intermediate People's Court to determine whether Xinte's expandable hose products infringe the '915 Patent. *See* ECF No. 2-7 at 6 ("Upon comparison, it is clear that the accused products do not infringe on the [the '915 Patent], as they clearly lack the following technical features and thus fall outside the scope of protection of the Patent at Issue."); *id.* at 8 ("In summary, the accused infringing products do not possess multiple technical features of the Patent at Issue and **clearly** do not fall within the scope of protection of the Patent at Issue.") (emphasis in original).

In June 2025, Telebrands, through its Chinese counsel, filed a jurisdictional objection in the China Action, noting, that the appropriate courts for determining infringement of a United States patent are in the United States. *See* 8 U.S.C. § 1338(a) (expressly granting U.S. district courts original jurisdiction over disputes involving U.S. patents). There is no provision of the Patent Act, 35 U.S.C. §§ 1 *et seq.*, that provides for the adjudication of infringement of a U.S. patent in a court outside of the United States.

Nevertheless, in September 2025, the Yangjiang Intermediate People's Court rejected Telebrands' jurisdictional objection, finding jurisdiction over the unfair competition claim to be proper, and confirming its intent to review and make determinations concerning U.S. patent law and the '915 Patent. *See* ECF No. 2-17 at 8 (finding that the Chinese court "is the most convenient forum for hearing this case" and "is clearly superior to the United States courts" because "compared with the technical determination under U.S. patent law, determination of damage consequences and compensation amounts involves more complex evidence collection and application of law and comprises a greater workload").

In April 2026, the Guangdong Provincial High People's Court affirmed the decision on appeal. *See* ECF No. 2-21 at 3, 6 (affirming that the lower court has jurisdiction over "a foreign-related dispute over unfair competition" because "the place where the infringement consequences occurred" was determined to be "the registered address and principal place of business of Xinte Co.," which is located in Yangjiang City, Guangdong Province, China).

Plaintiff has exhausted all of its procedural remedies to attempt to persuade the Chinese courts that they should not exercise jurisdiction over issues of U.S. patent law associated with the '915 Patent. On May 13–14, 2026, the Yangjiang Intermediate People's Court issued summonses for June 25, 2026 and July 2, 2026 hearings, confirming the Chinese court's intent to proceed with the China Action.

Plaintiff filed this action on June 1, 2026, alleging direct and indirect infringement of the '915 Patent. ECF No. 1. On the same date, Plaintiff filed an *ex parte* motion for a temporary restraining order ("TRO") pending resolution of its request for an anti-suit injunction ("ASI"). ECF No. 2. Plaintiff seeks an order (1) enjoining Defendants from taking any further action in the China Action, (2) prohibiting Defendants from pursuing any adjudication of the '915 Patent or any U.S. patents before Chinese courts, including in the China Action, and (3) preventing Defendants from seeking or enforcing an anti-anti-suit injunction ("AASI") against Telebrands before Chinese courts, including in the China Action. *Id.* at 3–4. The Court held an *ex parte* hearing on June 9, 2026, and took the matter under advisement.

## ANALYSIS

### I.   Personal Jurisdiction over Defendants

The Court first considers its personal jurisdiction over Defendants, applying Federal Circuit law. *See Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir.

2006); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) (applying Federal Circuit law, rather than regional circuit law, where the personal jurisdiction inquiry is "intimately related to substantive patent law").

Plaintiff alleges that Defendants are subject to personal jurisdiction under Texas's long-arm statute because "upon information and belief, Defendants regularly conduct, transact and/or solicit business in Texas, market and sell infringing products, and/or derive substantial revenues from their business transactions in Texas," including "the sale and shipment of infringing expandable garden hose products." ECF No. 1 ¶ 7 (citing Tex. Civ. Prac. & Rem. Code § 17.042(2)). In the alternative, Plaintiff alleges that the Court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), which "serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009).

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In order for there to be minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[ ], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation marks omitted).

The Federal Circuit has established a three-step analysis for determining whether specific jurisdiction exists: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

Selling, or making offers to sell, infringing products in the forum State satisfies the "purposeful availment" prong and is sufficiently related to a patent infringement claim to satisfy the "arising out of" and "relating to" prong of the due process test. *See 3D Systems, Inc. v. Aarotech Laboratories*, 160 F.3d 1373, 1379 (Fed. Cir. 1998). There is no reason to believe that the Court's exercise of personal jurisdiction over Defendants in this matter is unreasonable.

Thus, the Court concludes that Defendants are subject to personal jurisdiction in Texas.

## II.     Motion for TRO

### A.     Legal Standard

Federal courts have authority to enjoin parties from maintaining actions in foreign courts that divest U.S. courts of jurisdiction in cases properly before them. *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 564 (5th Cir. 2020) (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996)). When assessing whether to grant an ASI, the Fifth Circuit does not apply the traditional four-part injunction test. *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584-85 (5th Cir. 2023). Rather, "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions" that focus on harms arising from the foreign proceeding itself. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 335 F.3d 357, 364 (5th Cir. 2003).

The Fifth Circuit requires for an ASI: (1) that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation; (2) that at least one harm from the

6

foreign litigation—referred to as *Unterweser* threats—be identified; and (3) that any *Unterweser* threats found be weighed against the need to defer to principles of international comity. *Kaepa*, 76 F.3d at 626-28 (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)). *Unterweser* articulates the following disjunctive factors to inform this ASI analysis:

> An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles.

*MWK Recruiting*, 833 F. App'x at 562 (citing *Unterweser*, 428 F.2d at 890).

## B.     Analysis

Because the Chinese Entities' unfair competition claim is premised on their non-infringement argument, a ruling in the U.S. action that they have infringed '915 Patent would likely dispose of the relevant issues in the foreign litigation. 428 F.2d at 896. Moreover, their demand that the Chinese court adjudicate issues of U.S. patent law—despite the fact that U.S. federal courts have original and exclusive jurisdiction over patent cases under 28 U.S.C. § 1338(a)—would frustrate U.S. policy. *See Bayerische Motoren Werke Aktiengesellschaft v. Onesta, LLC*, 821 F. Supp. 3d 686, 691 (W.D. Tex. 2026) ("Allowing the Munich proceedings to continue threatens the United States' policy interest in adjudicating its own patents and protecting litigants' jury rights in infringement cases. Similarly, proceedings in the Munich court necessarily deprive BMW of critical defendant rights available only here—e.g., fact discovery; invalidity consideration with *erga omnes* effect; and juries as a bulwark against the improper grant or assertion of U.S. patents.").

While the Court concludes that Plaintiff is likely to generally prevail on its request for an ASI prohibiting Defendants from pursuing any adjudication of the '915 Patent in the China Action, its request to enjoin Defendants from pursuing any adjudication of "any U.S. patents" before Chinese courts is overbroad and exceeds the Court's subject matter jurisdiction given that Plaintiff has not established standing as to any patents other than the '915 Patent.

The Court finds that the status quo should be maintained pending the Court's evaluation of, and ruling on, an ASI. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b). Here, the Court finds a substantial risk of irreparable harm to Telebrands, and to the jurisdiction of this Court. Because Defendants are foreign corporations using foreign courts to seek illegitimate determinations of United States patent law, there is no adequate remedy at law to compensate Plaintiff for the Chinese courts' adjudication of their patents. Although Plaintiff's argument that the Chinese Entities are substantially likely to pursue an anti-anti-suit injunction ("AASI") against Telebrands in the Yangjiang Intermediate People's Court is speculative, the consequences of such an injunction would represent a profound interference with this Court's jurisdiction over this case.

Plaintiff has demonstrated that the threatened injury to Plaintiff outweighs the possible damages Defendants face due to a temporary injunction. Because Defendants cannot conceivably suffer harm by being, and continuing to be, subject to the legitimate jurisdiction of this Court and by temporarily maintaining the status quo, the Court finds that the proper amount of security for

this TRO under Rule 65(c) is Zero United States Dollars ($0.00). *A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (the Court's discretion when setting a security bond includes the ability to "require no security at all.") (quoting *Kaepa*, 76 F.3d at 628).

This Order temporarily restraining Defendants will not disserve the public interest. This Order will serve the public interest in preserving Plaintiff's duly granted U.S. patent rights, and preventing foreign courts from harming patent owners' rights through illegitimate determinations of United States patent law.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order (ECF No. 2) is **GRANTED** as to Defendants' activity in the China Action and **DENIED** in all other respects.

It is **ORDERED** that, effective immediately, Defendants Xinte, Deyue, Shaolong, and Puzhuo, and their officers, directors, agents, servants, employees, attorneys, and any other person in active concert or participation with them, shall refrain from any of the following acts until further order of this Court:

> Making any request, claim, application, or motion further pursuing or enforcing an injunction from the Yangjiang Intermediate People's Court that would prohibit, deter, impose monetary fines on, or otherwise limit in any way Plaintiff's ability to fully and completely prosecute this action, request and enforce relief, or which would impair this Court's ability to adjudicate any and all matters in this lawsuit.

Plaintiff is **ORDERED** to request a summons and provide actual notice, by serving, in accordance with the Federal Rules of Civil Procedure, a copy of this Order and all papers upon which this Order is based to Defendants, as follows:

1) by mail and/or hand delivery, whichever is feasible, to all Defendants' representatives listed in the civil complaint in the China Action;

2) by email and/or hand delivery, whichever is feasible, to Defendants' legal counsel in the China Action;

9

3)  by email, to Xinte at the email address listed on Xinte's website;

4)  by email, to Xinte's counsel from the New Jersey Action; and

5)  by email, to Xinte's representatives before the United States Patent and Trademark Office (USPTO) associated with Xinte's registered U.S. patents and trademark.

It is **FURTHER ORDERED** that Defendants shall respond to Plaintiff's request for an ASI enjoining Defendants from such activities as described in the paragraphs above, and the additional relief requested to enjoin Defendants from pursuing any action involving infringement of United States patents in a foreign jurisdiction against Plaintiff. The Court establishes the following briefing schedule for consideration of Plaintiff's ASI request:

1)    The Court will consider Plaintiff's TRO as also constituting its motion for an ASI and motion for continuation of the TRO.

2)    Defendants shall have until **June 19, 2026** to file a response in opposition to the motion for an ASI and motion for continuation of the TRO.

3)    Plaintiff will have until **June 21, 2026** to file a reply.

4)    The motion is set for a hearing on Monday, **June 22, 2026** at **10:30 a.m.** to be conducted by Zoom.

This Order shall expire on its own terms on **June 23, 2026**, unless further extended by Order of this Court. For good cause shown and upon written application to the Court, this Order may be extended for a longer period determined by the Court.

It is so **ORDERED**.

**SIGNED** this 9th day of June, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE